D. N. & E. Walter & Co., et al. *v.* United States (No. 4868) [1]

United States Court of Customs and Patent Appeals, April 30, 1957

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for appellants.

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Richard H. Welsh* and *Mollie Strum*, trial attorneys, of counsel), for the United States.

[Oral argument April 4, 1957, by Mr. George R. Tuttle and Mr. Welsh]

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, RICH, and JACKSON (retired), Associate Judges

RICH, Judge, delivered the opinion of the court:

This is an appeal by the importer, appellants herein, hereafter sometimes referred to as the Walter Company, from a judgment of the United States Customs Court, First Division, C. D. 1744, overruling the protest herein against the classification of certain rolls of bamboo blind or drapery material.

The Collector of Customs at the Port of San Francisco classified the merchandise as articles not specially provided for, wholly or partly manufactured of bamboo, under paragraph 409 of the Tariff Act of 1930, and assessed duty thereon at the rate of 45 per centum ad valorem.

The protest claimed that the merchandise should be dutiable at 16⅔ per centum ad valorem, under paragraph 412 of said Act as modified, as a manufacture of wood, or at 20 per centum ad valorem under paragraph 1558 as an unenumerated article manufactured in part.

---

[1] C. A. D. 652.

The statutes involved are as follows:

Par. 409. . . . all articles not specially provided for, wholly or partly manufactured of rattan, bamboo, osier or willow, 45 per centum ad valorem.

Par. 412. . . . wood flour, and manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for, 16⅔ per centum ad valorem.[1]

Par. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

The merchandise, as shown in the exhibits and by the testimony of the single witness, consists of narrow strips of bamboo (matchstick size), 7 feet or 7 feet 6 inches long, woven longitudinally with cord at 2 inch intervals which serves to hold the strips of bamboo parallel to each other, the imports being sheets or strips of such material 100 feet long.

The material is used much as cloth would be used to make draperies, window shades, floor screens, cornices and the like by cutting the long strips into smaller sections of the desired size. The testimony indicates that the edges are normally bound or hemmed with cotton tape after the cutting operation.

The Walter Company contends that the import is not an "article" within the meaning of the term "articles" as used in paragraph 409 of the Tariff Act of 1930, wherein it has a narrow meaning; that the various contexts in which the word "article" is used in the Tariff Act of 1930, as well as its relationship to the merchandise which it purports to denote, indicate that Congress intended to exclude uncompleted articles from paragraph 409; that the decision of *Bough* v. *United States*, 14 Ct. Cust. Appls. 60, T. D. 41575, does not require, as the Customs Court is alleged to have held, that the bamboo blind material be classified under paragraph 409; and that the merchandise should be classified under paragraph 1558 as an unenumerated article manufactured in part, not specifically provided for.

The Government contends that the imported merchandise is properly dutiable under paragraph 409, as classified and as held by the lower court.

We shall first dispose of the protest claim that the merchandise should be classified under paragraph 412. This point was not discussed by the Customs Court which simply held that paragraph 409 took precedence over both paragraphs 412 and 1558. The point was raised by the assignment of errors and so is before us. However, after devoting several pages to this question, appellants' brief concludes as follows:

Hence, the bamboo material is not properly classifiable as a manufacture of wood under paragraph 412.

---

[1] The rate of duty under paragraph 412 was reduced to 16⅔ percent ad valorem by the presidential proclamation carrying out the Annecy Protocol of Terms and Accession to the General Agreement on Tariffs and Trade. See T. D. 52373.

The Government, in its brief, treated the claim under paragraph 412 as abandoned, in view of the foregoing statement. We think this conclusion was entirely justified. At the argument appellants' counsel stated that this point had not been abandoned. We think appellants cannot blow hot and cold on this issue and having urged upon us that paragraph 412 is not applicable, that question is out of the case. This leaves for consideration whether the merchandise should be classified under paragraph 409 or 1558.,

Fundamentally, the Walter Company's contention is that the term "articles" as used in paragraph 409 has been judicially interpreted to have a restricted and narrow meaning denoting only objects fully completed and ready for their ultimate use. Heavy reliance appears to be placed on implications to be drawn from *Bough* v. *United States, supra.* That case was decided under paragraph 407 of the Tariff Act of 1922, the predecessor provision of paragraph 409 of the Tariff Act of 1930 involved herein. The predecessor paragraph, 407, was in identical language, "articles not specially provided for, wholly or partly manufactured of * * * bamboo." The merchandise involved was Chinese paper umbrellas with bamboo struts, the component of chief value being the paper. The umbrellas were classified by the collector under paragraph 407 as articles partly manufactured of bamboo, from which classification the importer appealed, by way of protest, claiming the umbrellas were properly dutiable under the provisions of paragraph 1313 of the 1922 Act for "manufactures of paper, or of which paper is the component of chief value."

The case was decided solely on the issue of relative specificity. In resolving that issue, the court considered several earlier cases on the question of relative specificity and came to the conclusion that "articles not specially provided for, wholly or partly manufactured of bamboo" was more specific than "manufactures of paper, or of which paper is the component of chief value," on the basis of precedents holding "articles" to be a more specific designation than the general word "manufactures."

As was pointed out, quite correctly, by the court below in the present case:

This ruling has been extended and generalized in subsequent cases to read as follows:

* * * the term "articles" is a more specific designation than the term "manufactures of" * * * [*International Expediters, Inc.* v. *United States,* 41 C. C. P. A. (Customs) 156, 158, C. A. D. 543.]

Beyond that we do not see that the *Bough* case has any applicability to the present case. Apellants' counsel argues that the rule just quoted was necessarily enunciated on the hypothesis that the word "articles" was used in its narrow sense and *thus included only those things that were completed and ready, without further processing, for their ultimate use.* We find ourselves unable to draw any such

inferences from the *Bough* case opinion, which does not discuss the scope of the word "articles" except in comparison to the word "manufactures." It certainly neither holds nor implies that a thing is not an article unless it is complete and ready for its ultimate use. Neither does it say nor imply that "article" is tantamount to an *eo nomine* designation, as appellants claim. That was a statement made by the lower court in this case, predicated on an examination of other opinions cited in the *Bough* case.

In further discussion of the term "articles," the court below also stated:

Insofar as the scope of the term is concerned, *Junge* v. *Hedden*, 146 U. S. 233, 36 L. ed. 953, is authority for the statement that—

In common usage, "article" is applied to almost every separate substance or material, whether as a member of a class, or as a particular substance or commodity.

—in other words, that the term in its broad sense may apply to crude, processed, or partly or wholly manufactured things. The same and other cases have recognized that the word "articles," depending upon the context of the paragraphs with which it is associated, may have a less comprehensive or narrower signification. *United States* v. *Eimer & Amend*, 28 C. C. P. A. (Customs) 10, 12–13, C. A. D. 117.

In the *Eimer & Amend* case cited by the Customs Court, this court had occasion to point out that the word "articles" is used hundreds of times in most tariff statutes; that Congress clearly meant it to have a broad meaning in some provisions and a restricted meaning in others; and that *it has meanings varying with the purposes to be accomplished.* The court there held (one judge dissenting) that glass wool imported in bulk responded to the term "articles," citing, *inter alia*, a case in point here because it involved upholstery cloth imported "in the piece" held to respond to the term "articles," *Lussky, White & Coolidge, Inc.* v. *United States*, 21 C. C. P. A. (Customs) 201, T. D. 46727. The importer there, as here, earnestly contended that "articles" there means only such articles as were *made from* cloth and that cloth in the piece could not be regarded as an article.

The phrase involved in the *Lussky* case, *supra*, was in an additional duty paragraph referring to "All articles enumerated in this schedule" having a certain characteristic. The same issue came up again in *Joshua Hoyle & Sons, Ltd., Inc., et al.* v. *United States*, 22 C. C. P. A. (Customs) 265, T. D. 47326, where this court held that certain cotton goods in the piece, the principal import being used for making typewriter ribbons, responded to the term "articles" in that paragraph.

In *D. C. Andrews & Co.* v. *United States*, 25 C. C. P. A. (Customs) 437, T. D. 49507, this court considered paragraph 397, "Articles or wares not specially provided for," etc. and said:

It is obvious that the term "article" is broad enough in the nonenumerated paragraph to include any nonenumerated substance. Possibly, in other para-

graphs the term "article" necessarily would be given a narrower meaning depending upon the context, scope, and purpose of the whole provision.

The opinion also refers to "the various shades of meaning which might be attached to the words 'articles' and 'wares' as used in the different provisions of the Tariff Act of 1930 * * *."

In view of the foregoing, it can scarcely be said that the interpretation of the word "articles" is a matter of all black or all white as appellants' counsel would have us believe. Their argument proceeds along the line that "articles" has a broad meaning and *a* narrow meaning between which we must choose and that if we select *the* narrow meaning then the articles must be "completed and ready, without further processing, for their ultimate use." They say they have found "no decision of any court holding an uncompleted object to be an article within the narrow concept of that word." We think the *Lussky, White & Coolidge* case, *supra*, and *Joshua Hoyle & Sons* case, *supra*, not only are such but are also adverse to appellants' contention that goods in the piece are merely materials for making articles and not articles *per se*.

To the same effect is *Lunham & Reeve, Inc.* v. *United States*, 28 C. C. P. A. (Customs) 268, C. A. D. 153. In that case the merchandise consisted of strips of zinc 0.008″ thick, 0.75″ wide and 125 meters long, imported in coils which were later treated and finished to make material for binding linoleum, shoe eyelets, radio connections, etc. The merchandise had been classified under paragraph 397 of the Tariff Act of 1930 as "Articles or wares not specially provided for, * * * composed * * * in chief value of * * * zinc, * * * whether partly or wholly manufactured." The importer claimed that the merchandise did not consist of "articles" because it did not have a sole use and because inspection would reveal that the article was not what it would eventually be as a distinct "article."

This court there stated that it was immaterial whether the involved merchandise had one or many uses, or what its utility might be, and held that the coiled strips of zinc were "articles." It was further held that there was nothing in the context, scope, or purpose of paragraph 397 by reason of which a narrow meaning should attach to the word "articles," as the appellant there contended.

Another similar case is *Braun-Steeple Co. et al.* v. *United States*, 18 C. C. P. A. (Customs) 437, T. D. 44683, in which the imports were steel sheets perforated with fancy designs, 3 feet by 6 feet in size, which after importation were cut to shape to make radiator covers, metal bed panels, lanterns, lighting fixtures, fire screens and possibly other articles. It was held that the perforated sheets were "articles" and not "mere sheets, plates, or steel, not specially provided for."

Appellants have cited a number of cases, for the most part decided much earlier than those we have just discussed, which are alleged to

be contrary in principle to the decision here on appeal. We have carefully considered all of them. While at first blush there may seem to be some apparent conflict we feel that taking into consideration the various competing provisions actually involved, which were not the provisions involved here, the weight of authority is clearly contrary to appellants' contentions.

The actual competition here is between paragraph 409 for *all articles* not specially provided for, *partly manufactured of bamboo.* and the basket provision of paragraph 1558 for all articles manufactured, in whole or in part, not specially provided for.

Of course, there is no question but that the 100 foot rolls of manufactured bamboo blind material are within paragraph 1558 if they are not specially provided for elsewhere. But since we deem this import to be an article, we hold that it is specially provided for in paragraph 409 which was evidently intended to include all of the articles wholly or partly manufactured of bamboo which had not been more specifically provided for, clearly a more specific provision than paragraph 1558.

Furthermore, though it may not have been the usual course of business, the record shows that if one could make use of 100 feet of this blind, the product could be used as imported, without change, and the entire rolls of the material would be sold. Of course, the mere fact that one large roll of bamboo blind, being itself an article capable of use, could be and usually would be cut up to make smaller blinds or even other articles such as screens or cornices (valance boards), does not change its status as an article.

For the reasons set forth, the decision of the Customs Court is *affirmed.*

JACKSON, J., Retired, recalled to participate herein in place of COLE, J., absent because of illness.